**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LINDA WHITE,

           Plaintiff,

vs.                                                      Case No. 3:12-cv-798-J-JRK

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

           Defendant.
_____/

## OPINION AND ORDER[2]

### I. Status

Linda White ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff alleges disability based on "fibromyalgia, chronic fati[g]ue, irritable bowel syndrome, depression, headaches, and memory loss." Transcript of Administrative Proceedings (Doc. No. 8; "Tr." or "administrative transcript"), filed December 10, 2012, at 84. On May 29, 2009, Plaintiff filed an application for DIB. Tr. at 129-30. Plaintiff alleged an onset date of May 31, 2008. Tr. at 129. Plaintiff's application was denied initially, see Tr. at 71-73, and was denied upon reconsideration, see Tr. at 85-86.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 9), filed December 12, 2012; Reference Order (Doc. No. 11), entered December 13, 2012.

On March 3, 2011, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified. Tr. at 25-59. At the time of the hearing, Plaintiff was fifty-five (55) years old. Tr. at 30. The ALJ issued a Decision on March 18, 2011, finding Plaintiff not disabled through the date of the Decision. Tr. at 13-20. On June 21, 2012, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On July 16, 2012, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff alleges one error by the ALJ. See Memorandum in Support of Complaint (Doc. No. 13; "Pl.'s Mem."), filed January 28, 2013. Plaintiff broadly challenges the ALJ's assignment of weight to the medical opinions in the administrative transcript. See Pl.'s Mem. at 3-7. Plaintiff also asserts that "[i]f the [P]laintiff's testimony is believed she would [be] restricted to less than frequent use of the hands and her [past relevant] work would be precluded." Id. at 6. On April 11, 2013, Defendant filed a memorandum responding to Plaintiff's argument and asserting that the Commissioner's final decision is supported by substantial evidence. See Memorandum in Support of the Commissioner's Decision (Doc. No. 14), at 4-15. After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be reversed and remanded for the reasons explained below.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry through the fourth step. See Tr. at 15-19. At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since May 31, 2008, the alleged onset date." Tr. at 15 (emphasis and citation omitted). At step two, the ALJ found Plaintiff suffers from "the following severe impairments: fibromyalgia and obesity." Tr. at 15 (emphasis and citation omitted). At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 16 (emphasis and citation omitted). The ALJ determined Plaintiff has the residual functional capacity ("RFC") "to perform the full range of sedentary work . . . ." Tr. at 16

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

(emphasis and citation omitted). At step four, the ALJ found Plaintiff "is capable of performing past relevant work as secretary, administrative assistant, and a senior budget analyst." Tr. at 19 (emphasis omitted). The ALJ concluded that Plaintiff "has not been under a disability . . . from May 31, 2008, through the date of th[e D]ecision." Tr. at 19 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial

evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted above, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded on the issue raised by Plaintiff relating to the medical opinions in the administrative transcript. Given that the matter is to be remanded for further consideration, the undersigned also notes a second problem with the ALJ's Decision that must be addressed on remand: the ALJ's assessment of Plaintiff's credibility. The undersigned first addresses the ALJ's consideration of and assignment of weight to the medical opinions of record followed by an analysis of the ALJ's credibility finding.

### A. Medical Opinions[4]

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength

---

[4] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

-5-

of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician,[5] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c).  Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id.  When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence

---

[5] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records.  Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted).  Similarly, the opinions of nonexamining physicians, taken alone, do not constitute substantial evidence.  Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)).  However, an ALJ may rely on a nonexamining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of a treating physician that is inconsistent with the evidence. Oldham, 660 F.2d at 1084.

An ALJ is required to consider every medical opinion.  See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").  While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing

Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

Here, the ALJ assigned "[g]reat weight . . . [to] the opinion of the consultative examiner, who examined and tested [Plaintiff] before issuing an unbiased opinion." Tr. at 18. The ALJ assigned "significant weight" to "the opinions of the State agency evaluators," because the ALJ determined that "[t]h[o]se unbiased sources reviewed records and issued opinions consistent with one another and with the record as a whole." Tr. at 18. The ALJ does not mention the examiner or evaluators by name or provide an explicit or complete summary of their opinions so as to indicate to which opinion she is referring. See Tr. at 18. After reviewing the parties' respective memoranda and the administrative transcript, however, it appears the consultative examiner was R. D. House, M.D. (Tr. at 383-87) and the State agency evaluators were Jesse Palmer, M.D. (Tr. at 411-18), Keith Bauer, Ph.D. (Tr. at 419-32), and Lauriann Sandrik, Psy.D. (Tr. at 388-401).

Dr. House performed a one-time consultative examination of Plaintiff on September 25, 2009. See Tr. at 383-87. Notably, during the examination, Dr. House recorded Plaintiff's right and left hand grip as "5/5" and further noted that she had "good dexterity." Tr. at 384. In relevant part, Dr. House assessed Plaintiff as having "[s]evere [f]ibromyalgia burning pain all large muscle groups, shoulder, back, thighs with difficulty sleeping . . . [and recorded that Plaintiff] cannot stand or sit for long periods of 15 minutes." Tr. at 384. He further assessed Plaintiff as having "[m]igraines headaches (dizziness, sensitive to lights, sounds, crowds)" and "[m]emory loss[,] difficulty sleeping, [and] difficulty concentrating." Tr. at 384.

Dr. House did not complete a medical source statement (he authored a detailed report of his consultative examination, see Tr. at 383-84, and completed a Range of Motion Report Form, see Tr. at 385-87), but the ALJ relied on one finding contained in Dr. House's report as an "opinion" and assigned it "great weight." Tr. at 18. The only portion of Dr. House's report that the ALJ discussed in the Decision is Dr. House's finding that Plaintiff had "5/5" grip strength in both hands during his one-time examination. Tr. at 18 (citing Tr. at 383-87). Dr. House's entire assessment of Plaintiff, however, seems to reveal far more serious symptoms and conditions than the ALJ assessed or accounted for in the RFC. Yet, this does not square with the ALJ's assignment of "great weight" to the opinion. The ALJ did not describe Dr. House's full report, nor did the ALJ explain that she was only assigning "[g]reat weight" to one of many findings contained in the report. Without explanation, the undersigned cannot determine whether this portion of the ALJ's Decision is supported by substantial evidence.

As to Dr. Palmer (Tr. at 411-18), Dr. Bauer (Tr. at 419-32), and Dr. Sandrik (Tr. at 388-401), the three State agency evaluators, the ALJ assigned their opinions "significant weight." Tr. at 18. Dr. Palmer completed a Physical RFC Assessment form on May 12, 2010, in which he found Plaintiff could occasionally and frequently lift 10 pounds, she could stand and/or walk for a total of about 6 hours in an 8-hour workday, and she could sit for a total of about 6 hours in an 8-hour workday. Tr. at 412. He then explained, in part, that Plaintiff's fibromyalgia "causes [her] to be unable to sit or stand in any one position for longer than 15 minutes." Tr. at 412. He noted that Plaintiff's "[f]inger and hand dexterity [was] intact." Tr. at 413. Dr. Palmer found that Plaintiff's "allegations appear proportionate to

findings of MER's."[6] Tr. at 416. Drs. Sandrik and Bauer both completed Psychiatric Review Technique forms and both concluded that Plaintiff's mental condition is not severe. Tr. at 400, 431.

A review of the ALJ's Decision, however, does not reveal any specific reference to Dr. Palmer's opinion (Exhibit 10F), Dr. Sandrik's opinion (Exhibit 7F), or Dr. Bauer's opinion (Exhibit 11F), other than the ALJ's assignment of weight to the opinions. While there is no requirement that the ALJ specifically name a consultative examiner or a State agency evaluator, without some indication that the ALJ actually considered the entirety of the opinions, the Court cannot review the Decision to determine whether it is supported by substantial evidence. Moreover, Dr. Palmer opined that Plaintiff could perform the exertional aspects of light work, but in his narrative explanation, he appears to have added some other limitations, all of which seem inconsistent with the assigned RFC. Compare Tr. at 412-13, with Tr. at 16. So, the Court cannot be sure Dr. Palmer's opinion was even considered.

Finally, the ALJ summarized some treatment notes from three of Plaintiff's treating physicians, see Tr. at 17, 18 (summarizing portions of treatment notes from Gary Gabor, M.D., Jaira Brieva, M.D., and Perry G. Carlos, D.O.[7]), but the ALJ did not state the weight, if any, she assigned to the medical opinions contained within those treatment notes. This alone constitutes error. See Winschel, 631 F.3d at 1179 (recognizing the broad definition

---

[6] Based upon a search of the Official Website of the U.S. Social Security Administration, the undersigned assumes that "MER" stands for Medical Evidence of Record. See Program Operations Manual System, DI 22505.001, Official Website of the U.S. Social Security Administration, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0422505001 (last visited Feb. 5, 2014).

[7] The only portion of Dr. Carlos's treatment notes that the ALJ summarized was the prescribed medications. Tr. at 17 (citing Exhibit 2F (Tr. at 308-28)).

of a "medical opinion" and reversing in part because the ALJ failed to consider a treating physician's treatment notes as a "medical opinion" when the notes "included a description of [the claimant's] symptoms, a diagnosis, and a judgment about the severity of his impairments . . ."); 20 C.F.R. §§ 404.1527(d), 416.927(d); see also Colon v. Colvin, No. 8:12-cv-2011-T-27MAP, 2013 WL 4890312, at *2-3 (M.D. Fla. Sept. 11, 2013) (unpublished).

In light of the above, the undersigned cannot determine whether the ALJ's Decision is supported by substantial evidence. This matter, therefore, is due to be reversed and remanded for further consideration of the medical opinions contained in the administrative transcript.

### B. Plaintiff's Credibility

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"[C]redibility determinations are the province of the ALJ." Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). The ALJ "must articulate explicit and adequate reasons" for finding a claimant "not credible." Wilson, 284 F.3d at 1225. "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily

-11-

activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications[;] and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). After considering the claimant's subjective complaints, "the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

With respect to the ALJ's credibility finding, the ALJ found that "[t]he severity of the symptoms and the alleged effect on function [are] not entirely consistent with the total medical and nonmedical evidence, including statements by [Plaintiff] and others, observations regarding activities of daily living, and alternations of usual behavior or habits." Tr. at 18. The ALJ then listed several examples of what she found to be inconsistencies. After reviewing the ALJ's reasoning and the administrative transcript, the Court finds that the ALJ mischaracterized and/or incorrectly summarized Plaintiff's testimony.

For example, according to the ALJ, Plaintiff "testified that she could not walk for long due to numbness in her leg. However, [Plaintiff] also testified that she took a vacation and walked around sightseeing." Tr. at 18. What Plaintiff actually said at the hearing was, "We did some sightseeing, but we would take little short jaunts because I can't walk very much." Tr. at 40. Contrary to the ALJ's summary, Plaintiff testified that she took "short jaunts," not that she "walked around sightseeing."

As another example, the ALJ stated that "[a]lthough [Plaintiff] has testified that she has memory deficits, she reported to State agency representatives that she drives and spends time with friends playing trivia games." Tr. at 18.  Plaintiff did report to State agency representatives that she can drive.  <u>See</u> Tr. at 403.  As to the trivia games, however, Plaintiff stated that she "used to go play trivia[] mont[h]ly, but [Plaintiff and her friends] have not bee[n] for a coupl[e] mo[n]ths. [Plaintiff] currently finds it difficult to focus."  Tr. at 403.  It seems the ALJ to a degree mischaracterized what Plaintiff reported to the State agency representatives.

As one last example (though there are others), the ALJ noted that Plaintiff "testified to using the computer regularly to write journals, create greeting cards, and participate in social networking sites." Tr. at 18.  With respect to Plaintiff's computer usage, the following exchange occurred at the hearing:

> [Plaintiff]: I also make some birthday cards occasionally for, you know, friends and family, but - -
>
> [ALJ]: Is that done . . . with the computer?
>
> [Plaintiff]: Some journaling is done on the computer.
>
> [ALJ]: What about card-making?
>
> [Plaintiff]: Card-making, I usually type a couple of lines on the computer, yes.
>
> [ALJ]: Do you have a Facebook page on the computer?
>
> [Plaintiff]: I do.
>
> [ALJ]: How often do you check it?
>
> [Plaintiff]: Ooh, about twice a month.

> [ALJ]: Okay. Do you correspond with anybody on the computer through email systems and all?
>
> [Plaintiff]: Actually, I do send some emails to family, yes.
>
> [ALJ]: Do you take any course work on the computer?
>
> [Plaintiff]: No.

Tr. at 39. A fair reading of this exchange is not that Plaintiff uses the computer "regularly to write journals, create greeting cards, and participate in social networking sites." Rather, it seems Plaintiff occasionally uses the computer to complete certain tasks.

Given that this matter is due to be reversed and remanded on the issue raised by Plaintiff regarding medical opinions and in light of these examples, the undersigned finds it appropriate to direct that Plaintiff's credibility be reassessed on remand as well.[8]

## V. Conclusion

After due consideration, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

---

[8] Adding to the mischaracterization of the administrative transcript and confusion between the ALJ's Decision and the administrative transcript is an issue relating to the VE's testimony. In her Memorandum, Plaintiff notes that the VE "was not asked what the limitations in terms of [Plaintiff's] memory or concentration would have on skilled work." Pl.'s Mem. at 6. Plaintiff does not make an argument based on the ALJ's reliance on the VE's testimony (or lack thereof), but the undersigned notes the following. The ALJ explained in the Decision that "the [VE] testified that [Plaintiff] would be able to perform the requirements of these jobs, as actually performed by [Plaintiff] or as described in the D[ictionary of] O[ccupational] T[itles]." Tr. at 19. The ALJ found that Plaintiff "is able to perform this work as actually and generally performed, per the [VE]'s testimony." Tr. at 19. Other than listing Plaintiff's past relevant work and answering a few questions, the VE did not testify that Plaintiff would be able to return to any of those positions and no hypotheticals were posed to the VE. See Tr. at 54-58.

      (A)    Reevaluate the medical opinions of record, and state with particularity the weight afforded to each opinion; if an opinion of a treating physician is discounted, adequate reasons showing good cause for discounting it shall be provided and shall be supported by substantial evidence;

      (B)    Reconsider Plaintiff's testimony and if discredited, provide explicit and adequate reasons supported by substantial evidence; and

      (C)    Take such other action as may be necessary to resolve this claim properly.

2.    The Clerk is further directed to close the file.

3.    In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) or § 1383(d)(2) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on February 18, 2014.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

jlk
Copies to:
Counsel of Record